[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case arises out of a written lease between the parties dated May 23, 1990, wherein the defendant, Mat Realty, Inc., agreed to lease to the plaintiff corporation a portion of a three story building known as Portion 1A located on the first floor of premises located at 1698 Post Road East in Westport, Connecticut, comprising 1,666 square feet +/-. The original term of the lease was for four years for a yearly rental of $20,825 payable in equal monthly payments of $1,735.43. The lease provides for two additional two year options to re-lease the premises. The lease was a gross lease with no additions for utilities. The lease also provided for yearly increases in rent based on the Consumer Price Index, but in no event to be less than five percent nor more than ten percent yearly.
The first witness called by the plaintiff was Marty Baer, the president of Professional Marketing, which company is involved in the sale of promotional services. Mr. Baer apparently bought this company some time before 1987 when it was then housed in Norwalk, Connecticut. Mr. Baer admitted he had nothing to do with leasing the Norwalk facility as the business was already housed there when he acquired it. He further admitted he had no previous experience in leasing commercial property.
Soon after, Mr. Baer realized he needed additional space for his business, and he had special needs including a loading dock and space for large display areas. He was dealing with a realtor by the name of Deborah Foehr who took him to the defendant's property as well as other CT Page 11551 properties. All of the negotiations for the premises were done by Foehr with the defendant and Baer had no contact with the defendant. He admits Foehr told him this was a great deal for him. He had a full opportunity to view the premises before he leased them. He had no discussions with the defendant for a price per square foot nor any discussions regarding square footage with anyone on behalf of the defendant.
Baer described an exercise he went through to evaluate the merits of the deal. He divided the estimated square footage by the total yearly rent and came up with a calculation of per square foot cost to him which, in the case of Portion 1A, was $12.50 per square foot. He admitted that no one on behalf of the defendant stated he was leasing exactly 1,666 square feet at $12.50 per square foot. He never measured the interior dimensions of the space within the walls of space 1A and had no idea of whether the estimated square footage included common areas or not. Other than for the realtor, he was represented by no one in the lease negotiations or lease signing. He merely viewed the premises, was told it was a great deal, did his calculation and signed the lease. He remained on these premises for the entire four years and the additional two two year extensions, and in fact remained on the premises without a lease for the first three months of 1999. He paid all due rent through December 31, 1998, but did not pay rent for January, February or March of 1999.
It is of interest to note that this lease, plaintiff's exhibit 1, was the only written lease ever executed between the parties.
In early 1991, Baer recognized he needed more space and began to negotiate with New Directions Consultants, which company leased the balance of the first floor space in premises designated as 1B. Baer dealt directly with Directions to lease their conference room which required the permission of the defendant which was given by Randy Reich on behalf of the defendant. Baer agreed with Directions to pay $400 per month to the defendant for this space on a month-to-month basis as of April, 1991. He claims he asked Reich for the dimensions of this space and believes he was told somewhere around 250 square feet. He again made his own calculation of square feet cost on the same basis as was previously done and occupied the space and paid the rent. Again, he was never told he was renting a specific number of square feet at a rent at a specific amount per square foot. Nothing was reduced to writing.
Some rime in early 1992, Mr. Baer again felt he needed more space and began negotiating with Mr. Reich for the balance of the space within 1B. He testified Reich told him it added about 1,008 square feet to what he already was leasing. Reich gave him a gross rental figure for the space. Baer did his arithmetic as he had previously done and leased the CT Page 11552 additional space as of April 1, 1992. He admits that no one ever told him he was leasing at a specific per square foot price. No lease or writing ever memorialized this additional taking of space. The landlord considered it a month-to-month lease, and the plaintiff somehow believed it became incorporated into the original written lease. There is no support for the plaintiff's believe, and the court finds that it never amounted to anything but a month-to-month lease. Be that as it may, the plaintiff occupied the space and paid the rent through December 31, 1998 and held over during January, February and March of 1999 without paying rent.
Some time in 1994, Mr. Baer needed more space and began negotiations with Reich for that space on the third floor of the building. Reich gave him a gross yearly rent, told him there was approximately 711 square feet in the new area and Mr. Baer did his same calculation and figured the space would cost $15.19 per square foot. Again he admits that no one on behalf of the defendant ever used that number or represented that it was being rented on a per square foot basis. He was merely shown the space, given the yearly rent for it, did his calculation for his own purpose and began renting the space, occupying it and paying the rent. As with the three prior pieces, he made no measurements of his own to confirm square footage, stairwells, an elevator, lavatories and other common areas used by the other tenants. Once again, no new lease or any writing for this space ever existed.
In 1997 Mr. Baer again decided he needed more space and began negotiations with Reich for 1/2 of the second floor and for a termination of the month-to-month lease on the third floor. Baer again testified that Reich described the space as containing approximately 1,683 square feet, gave him a yearly rental figure which now added utilities as an additional cost. Baer again did his arithmetic calculation to determine what he believed was his per square foot cost and then occupied the space and paid rent through December 31, 1998. He occupied the space but did not pay rent for January, February and March of 1999. Again, there was nothing in writing to memorialize this new arrangement, and the defendant again never offered to or leased this space on a per square foot basis. This oral month-to-month lease for the second floor commenced in May of 1997.
There is no question but that the plaintiff on several occasions from 1992 through 1997 attempted to determine the square footage of the various portions of the defendant's building (see plaintiff's exhibits 3, 4, 6, 7, 9 and 10) he was leasing. The problem with his requests is that they never referred to rentable square footage or usable square footage. This is a critical factor in the determination of this case. In fact, neither the one written lease nor the several oral month-to-month CT Page 11553 leases do either. His requests were generally not responded to until some time in 1997.
Things began to disintegrate in the latter part of 1998 when the original written lease was to terminate. By letter dated December 11, 1998, the defendant wrote the plaintiff describing a new offer to renew all the leases for a period of three or five years for a yearly rental of $100,980. Again, there was no reference to a lease for a particular number of square feet at a fixed per square foot cost. (Plaintiff's exhibit 11.) On December 18, 1998, the plaintiff responded (plaintiff's exhibit 12) complaining that this was almost a 30 per cent increase. Two additional pieces of correspondence (plaintiff's exhibits 15 and 16), the final one dated December 31, 1998 from Reich to the plaintiff's comptroller, estimated the gross square footage leased by the plaintiff to be "approximately 4,700."
The plaintiff did not lease any of the defendant's property after December 31, 1998, although it occupied those premises for the months of January, February and March of 1999 without any payment. Both by evidence and a stipulation, the total rental for those premises for the three months totaled $17,904.78. The plaintiff vacated the premises without advising the defendant or even returning the keys.
Mr. Baer testified that he became very concerned in 1998 about the square footage he was leasing and he measured the inside dimensions of each space by yardstick, his feet, assisted by a friend who was a builder and Town Hall records. He concluded that he was being charged for square footage that he was not getting. In February of 1999 he hired a company called Leasewatch L.T.D. to do exact measurements to confirm his findings. The results of those measurements apparently confirmed to the plaintiff what his own findings were and he commenced this lawsuit.
The plaintiff's complaint is in four counts. The first count sounding in breach of contract describes and compares what the plaintiff's measurements of square footage concluded against what the defendant represented them to be. The second count is for misrepresentation; the third count is for unjust enrichment; and the fourth count is for unfair trade practice. In essence, the plaintiff claims that in Suite 1A it was charged for 1,626 square feet when in fact all it got was 1,243 square feet; for the conference room in Suite 1B it was charged for 384 square feet when it only got 169 square feet; for expanded space in Suite 1B, it was charged for 768 square feet when it only got 686 square feet; for all of Suite 1B it was charged for 1008 square feet when it only got 948 square feet; for the space on the second floor it was charged for 1,683 square feet when it only got 998 square feet, and interestingly for the space on the third floor it was only charged for 711 square feet when it CT Page 11554 fact it actually got 811 square feet.
It must be emphasized that. all these calculations of square footage were prepared by Dinis Dias of Leasewatch on behalf of the plaintiff, which the court will discuss shortly. The defendant filed both a setoff and a counterclaim seeking rent for January, February and March of 1999.
Mr. Dias is the President and founder of Leasewatch. His prior experience was mainly in the business of managing large shopping centers. In the course of that business, he reviewed numerous leases. He was professionally engaged here to measure the space of each of the portions of 1698 Post Road East which the plaintiff rented from the defendant. He measured the spaces according to the BOMA standards. (See plaintiff's exhibit 18.) He basically does this work on a contingency basis charging his client fifty (50%) percent of what the client recovers from the landlord.
Mr. Bias then hired a Paul Holub, an architect, to take the measurements. Mr. Holub did whatever he was asked to do by Mr. Dias. Mr. Dias was present with him and assisted him in holding the tape measure when the measurements were made. Dias at all times controlled what was to be measured and from what point to what point he would measure. Holub was not aware of the BOMA standards until after he completed his measurements. He was instructed to measure only the interior measurements of each space. He made no measurements of hallways, elevators, stairwells, bathrooms or other common areas.
Mr. Holub thereafter prepared a space plan for each area. (See plaintiff's exhibits 19, 20, 21 and 22.) He used simple arithmetic to determine the interior floor area of each space. For space 1A, his measurement totaled 1,242 square feet; for space 1b, 948 square feet; for the third floor, 811 square feet and for the second floor, 998 square feet.
Mr. Dias testified that he got all his other information from documents supplied to him by the plaintiff or conversations he had with Mr. Baer or his accountant Al Bisland. He then made his calculations, which are contained in plaintiff's exhibit 23, the summary of which is listed on page 10. He basically took the information supplied by his client concerning square footage for each space, subtracted the calculation of square footage for each space supplied by Holub and multiplied that figure by the per square footage calculation Baer made when he evaluated each space. He came up with a total overcharge of $96,083.61. He admits he used as the basis for the Holub measurements and his calculations usable square footage although he admitted he could have used rentable square footage. CT Page 11555
The defense called Randy Reich as a witness. He was the defendant's property manager from 1991 until the plaintiff vacated the premises. He did not participate in the negotiations of the written lease but did negotiate all the subsequent oral leases. He testified that in none of these negotiations did he ever offer a per square foot lease, nor did the plaintiff ask for one. He in fact states he never supplied information concerning square footage until 1998.
Mr. Reich stated that, for each new space the plaintiff leased, he would merely look at what the previous tenant was paying and then add a small percentage. In each case, Mr. Baer inspected the premises, accepted them and began to pay the flat fee base rent that Reich quoted him. Reich reiterated he never gave a per square foot price or rented on a per square foot basis. All of the subsequent leases were oral, and he considered them to be month-to-month leases, a conclusion with which the court agrees.
The defendant then called Jon Angel of Angel Commercial Real Estate as an expert. He deals exclusively in commercial real estate. He states that it is customary for landlords in Fairfield County to lease to commercial tenants on a rentable space basis rather than a usable square foot basis. He defined each term. Usable square footage is that area that is exclusive to the tenant, the space totally within the tenant's right to use exclusive of anyone else. It would be essentially what Mr. Holub measured from the interior walls of the tenant's premises. Rentable square footage is the usable square footage plus a percentage for common areas, such as hallways, stairwells, elevators, bathrooms, etc., which are generally referred to as the core areas.
Mr. Angel went on to testify that when a lease does not by its terms specifically delineate that it is either for rentable or usable square footage, the custom in this area is that it is a rentable square foot lease. He opined that about 50 percent of leases do not delineate whether it is a rentable or usable square foot lease, and of those that do, they are split about 50/50 between rentable and usable.
Mr. Angel then reviewed plaintiff's exhibit 1, the written lease for 1,666 square feet, plus or minus, for a flat yearly rental of $20,825 and a monthly rate of $1,735.42 each month. He noted no delineation of a per square foot rental. His conclusion was that this lease was for rentable square footage which would include the usable square footage plus a percentage for core areas which tenants would share with other tenants, which figure could run anywhere from 10 percent to 40 percent. On cross-examination, Mr. Angel reiterated it was the common practice to rent on a rentable square foot basis unless a usable square foot rental CT Page 11556 was clearly specified, which it was not in this case. This court agrees with that opinion and conclusion.
The briefs of the parties in this case are mainly fact driven and there is little law anyone has supplied other than general propositions about contracts and how to construe contract language. This court must interpret the written lease and the subsequent oral leases and determine from what was written or said whether these leases were for rentable or usable space. Plaintiff's exhibit 1, paragraph 4, describes the lease as a gross lease with no additional charges to tenant. In paragraph 2 of the lease, the space is described as follows: "1666 +/- square feet on the first floor, Portion 1A." The court has always asked "plus or minus what." One hundred feet? Two hundred feet? Three hundred feet? No one knows and no one can find out. These facts, plus the fact that there is no language within plaintiff's exhibit 1 that delineates the space as usable square footage leads reasonably to the conclusion that this is a lease for rentable square footage which must include some percentage for core areas.
The court further finds that none of the subsequent oral leases were intended to or did become part of or an addition or amendment to plaintiff's exhibit 1. Each of them must be tested by the testimony in the case. The plaintiff obviously has the burden of proof. The court finds that all the subsequent oral leases were on a month-to-month basis for rentable square footage and there is no credible evidence that the defendant ever leased on a usable per square foot basis. The plaintiff presented no evidence of what the rentable square footage was of any of the spaces it rented and therefore there is no way to establish if it was overcharged.
Based on that analysis, the court will enter judgment on all four counts for the defendant in that the plaintiff has failed to prove the elements of any one of them.
On the counterclaim, judgment will enter for the defendant against the plaintiff for $17,904.78 representing the rent for January, February and March of 1999. The plaintiff admitted that he remained on the premises for those months and paid no rent. Both by testimony and a stipulation, the holdover rent for that period was $17,904.78.
GORMLEY, J.